## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 15-400-GW(ASx) | Date | April 23, 2015 |
| Title | *Sherif E. El Dabe v. Calavo Growers, Inc., et al.* | | |

Present: The Honorable GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Patrick V. Dahlstrom
Jennifer Pafiti

Attorneys Present for Defendants:

David Schwarz

**PROCEEDINGS:** MOTION OF THE CALAVO INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL [18]

The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Calavo Investor Group's motion is GRANTED. The above-entitled action is consolidated with *John O'Hanlon v. Lecile E Cole, et al.*, CV 15-414-GW(ASx). The appointment of Calavo Investor Group as Lead Plaintiff is GRANTED. Attorney Patrick V. Dahlstrom and the Pomerantz LLP firm are appointed as Lead Counsel.

Parties are advised that all subsequent filings will be filed under *Sherif E. El Dabe v. Calavo Growers, Inc., et al.*, CV 15-400-GW(ASx). A Notice of Appearance will be required in order for counsel to receive notice of all subsequent filings.

A Scheduling Conference is set for May 21, 2015 at 8:30 a.m. Parties will file a joint report by noon on May 19, 2015. Parties may appear telephonically provided that notice is given to the clerk two business days prior to the hearing.

: 10

Initials of Preparer   JG

***Sherif El Dabe v. Calavo Growers, Inc., et al.***, Case No. CV-15-0400-GW(ASx); ***O'Hanlon v. Lecile Cole, et al.***, Case No. CV-15-0414-GW(ASx); Tentative Ruling on Motions for Consolidation and Appointment of Lead Plaintiff/Lead Counsel

On March 23, 2015, Sherif E. El Dabe ("El Dabe"), John O'Hanlon ("O'Hanlon"), and Elliot C. Nelms ("Nelms") (collectively "CIG")[1] filed motions: (1) to consolidate El Dabe's and O'Hanlon's actions; (2) to appoint CIG as lead plaintiff on behalf of all persons who purchased or otherwise acquired Calavo Growers' securities between March 5, 2015 and June 15, 2015 ("Class Period"); and (3) to approve Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen") as co-lead counsel for the class. *See* Points and Authorities ("P & A"), Docket No. 19, at 1:2-18.

## I. Background

On January 20 and January 21, 2015, plaintiffs El Dabe and O'Hanlon filed separate class actions in this District against defendants Calavo Growers, Inc., Lecil E. Cole ("Cole"), and Author Bruno ("Bruno") (collectively "Calavo Growers"). Both El Dabe's and O'Hanlon's Complaints allege two identical causes of action: (1) violation of Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b-5 promulgated thereunder; and (2) violation of Section 20(a) of the Securities and Exchange Act of 1934. *See* El Dabe Compl., Case No. 15-CV-400, Docket No. 1, ¶¶ 75, 85-90; O'Hanlon Compl., Case No. 15-CV-414, Docket No. 1, ¶¶ 45-62. After filing, both cases were related before this Court. *See* Case No. 15-CV-414, Docket No. 8.

In June 2011, Calavo Growers acquired Renaissance Food Group, LLC ("RFG") for approximately $16 million payable in a combination of cash and unregistered common stock. *See* El Dabe Compl., ¶¶ 3-4. The acquisition agreement also provided for up to an additional $80 million in contingent payments based upon RFG's financial performance within the first five-years after the acquisition. *Id.* ¶ 4. The acquisition agreement provided that RFG's financial performance, for contingent payment purposes, would be measured during certain twelve month periods, and any additional payments to RFG could be made in shares of unregistered common stock. *Id.* During the first period after RFG's acquisition, RFG's

---

[1] Plaintiffs' Points and Authorities refer to this group of prospective lead plaintiffs as the "Calavo Investor Group."

1

operating results exceeded the acquisition agreement's defined thresholds, and Calavo Growers was obligated to make the maximum contingent payment. *Id.* ¶ 7.

CIG alleges that Calavo Growers should have recorded the contingent payment as a liability on its financial statements, but instead recorded it as an equity instrument. *Id.* Because the payment was not recorded as liability, it was not amortized as an expense on Calavo Growers' financial statements for the reporting periods that followed RFG's acquisition. *Id.* As a result of Calavo Growers' accounting error, its financial statements during the Class Period were inaccurate. *Id.* ¶ 59.

On January 15, 2015, Calavo Growers announced that it would treat misstated contingent payments as amortization expenses and record a non-cash charge totaling, over all periods, $88.9 million before tax ($54.0 million net of tax). *Id.* ¶ 61. Since Calavo Growers' financial statements contained the above misstatement, both Calavo Growers and its independent accounting firm, Ernst & Young LLP, announced that the financial statements for the fiscal years ended October 31, 2012 and 2013 and the quarters therein, as well as the quarters ending January 31, 2014, April 30, 2014 and July 31, 2014, should no longer be relied upon. *Id.* ¶ 62. Following these announcements, Calavo Growers' share price fell $4.72 per share, or over 9%, to close at $43.07 per share on January 15, 2015. *Id.* ¶ 63.

## II. Analysis

### A. Motion to Consolidate

Fed. R. Civ. P. 42(a) provides: "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . to avoid unnecessary cost or delay." *See* Fed. R. Civ. P. 42(a). The primary inquiry a court must address is whether the cases involve common questions of law or fact. *See In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 293 (E.D.N.Y. 1998); *Pan Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 523 F.2d 1073, 1080 (9th Cir. 1975). The district court has broad discretion in deciding whether to consolidate cases pending in the same district. *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008) (citing *Investors Research Co. v. United States Dist. Court*, 877 F.2d 777, 777 (9th Cir.1989)). In exercising its discretion, the court weighs the interest of judicial convenience "against any inconvenience, delay, or expense that [consolidation] would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir.1984).

2

All movants agree that both cases involve common questions of law and fact. *See* P & A, at 6. The Complaints filed in each action assert claims arising under Sections 10(b) and 20(a) of the Securities Exchange Act, and SEC Rule 10b-5. *Id.* Both Complaints name the same defendants and allege the same wrongful conduct, involving material misrepresentations and omissions concerning Calavo Growers' financial position over identical class periods. *Id.* Both cases were recently filed in the Central District of California and have been related before this Court. *See* C. D. Cal. L.R. 83-1.3.1; *see also* Case No. 15-CV-414, Docket No. 8. Consolidating the cases would assist this Court and the parties in avoiding any future unnecessary cost or delay.

The Motion to Consolidate is GRANTED.

### B. Appointment of Lead Plaintiff

#### 1. Legal Standard

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, governs the district court's selection of a lead plaintiff in private securities class actions. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The PSLRA requires the court to select as lead plaintiff the plaintiff "most capable of adequately representing the interests of class members." *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). The PLSRA narrowly defines the term "most capable" as the plaintiff "who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Id.*

The PSRLA sets forth a three-step process for selecting the lead plaintiff. *Id.* First, the plaintiff who filed the earliest action must provide the public with sufficient notice so that other class members may seek appointment as lead plaintiff. *Id.*; 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II). Second, the court must select the presumptive lead plaintiff by determining which plaintiff has the greatest financial stake in the action, whether that plaintiff's claims are typical of the class, and whether that plaintiff can "adequately protect the interests of the class." *In re Cavanaugh*, 306 F.3d at 730 & n.5 (quoting Fed. R. Civ. P. 23(a)). Third, once a presumptive lead plaintiff is identified, those plaintiffs not selected are given "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730. If the district court determines that the presumptive lead plaintiff does not meet Rule 23's requirements, the process is repeated sequentially, beginning with the plaintiff who has the next highest stake in the action, until the PSLRA's requirements are met or all challenges have been exhausted. *Id.* at 731.

### 2. *Notice*

The first plaintiff to file a securities fraud class action must, within 20 days of filing, cause a notice to be published "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must advise potential class members "of the pendency of the action, the claims asserted therein, and the purported class period[.]" 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). "Any class member, regardless of whether the member filed a complaint, may move for appointment as lead plaintiff." *Ferrari v. Gisch,* 225 F.R.D. 599, 602 (C.D. Cal. 2004) (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)). However, class members must make their motions within 60 days of the statutorily mandated publication. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Additionally, "each prospective lead plaintiff must provide a sworn certification representing *inter alia* that he or she has read the complaint, did not purchase the security at the direction of counsel or in order to participate in any private action, and is willing to serve as a representative party." *Richardson v. TVIA, Inc.,* No. 06-CV-6304-RMW, 2007 U.S. Dist. LEXIS 28406, at *9-10 (N.D. Cal. Apr. 16, 2007) (citing 15 U.S.C. § 78u-4(a)(2)(A)(i)-(iii)). Plaintiff certifications must set forth all of the plaintiff's transactions in the security at issue during the class period specified in the complaint. *Id.*; 15 U.S.C. § 78u-4(a)(2)(A)(iv).

On January 20, 2015, the same day El Dabe's Complaint was filed, counsel published an announcement on *Globe Newswire* stating that a securities class action had been filed against Calavo Growers. *See* Notice of Class Action, Docket No., 20-1, Ex. A. The notice contained all the information required under 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). Additionally, all three CIG members have submitted separate sworn certifications stating that they have reviewed the Complaint against Calavo Growers, that they did not purchase or acquire Calavo Growers' securities at counsel's direction, and that they are willing to serve as class representatives. *See* Certifications, Docket No. 20-2, Ex. B. Also, each CIG member has set forth his transactions in Calavo Growers' securities during the Class Period. *Id.* CIG has therefore met the PSLRA's notice requirements, brought its motion within 60 days, and satisfied the PSLRA's certification and transaction disclosure requirements.

### 3. *Presumptive Lead Plaintiff*

#### a) Financial Stake

The PSLRA requires the district court to "appoint as lead plaintiff the member or members of the purported plaintiff class that [it] determines to be most capable of adequately

representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the person "most capable of adequately representing the interests of class members" is the "person or group of persons" who has the largest financial interest in the relief sought. *See Cavanaugh*, 306 F.3d at 729 & n.2, 732; 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 707 (9th Cir. 2009). Neither the PSLRA nor the Ninth Circuit specifies precisely how to calculate which plaintiff has the largest financial interest. *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-3451-LHK, 2011 U.S. Dist. LEXIS 16813, at *10 (N.D. Cal. Feb. 15, 2011). In calculating which plaintiff has the greatest financial interest in the litigation, *Cavanaugh* permits the district court to "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 & n.4.

Due to the district court's broad discretion in selecting which accounting method to apply, courts have adopted different approaches to determine which plaintiff has the greatest financial interest in the litigation. Some courts have equated financial interest with actual economic losses suffered. *Zhamukhanov v. AcelRx Pharm., Inc.*, No. 14-CV-4416-LHK, 2015 U.S. Dist. LEXIS 22180, at *9-10 (N.D. Cal. Feb. 24, 2015). Other courts have equated financial interest with potential recovery. *See Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *12 (citations omitted). Overall, Ninth Circuit district courts tend to apply "the 'Olsten-Lax' factors to determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *11 (quoting *In re Olsten Corp.*, 3 F.Supp.2d at 295). The fourth factor, "approximate loss," is generally considered the "most determinative." *Id.* at *13-14.

Since CIG's financial interest is not contested, and its motion for appointment as lead plaintiff is unopposed, this Court does not need to select a specific accounting method or approach to adopt. *See* Response in Support of P & A, Docket No. 24, at 1. Consistent with the "Olsten-Lax" factors, during the Class Period, CIG: 1) purchased 1,516 shares of Calavo Growers' common stock[2]; 2) retained all 1,516 shares of Calavo Growers' common stock at the

---

[2] El Dabe owned 950 shares all all times during the Class Period; O'Halon owned 116 at the end of the Class period; Elliott Nelms owned 250 at the end of the Class Period. The numbers do not add up to what Calavo Investor Group

5

end of the Class Period; 3) invested $67,275 in Calavo Growers' securities during the Class Period; and 4) suffered an approximate loss of $2,406. *See* P & A, at 9:16-22. Because CIG is unopposed as lead plaintiff and, therefore, has shown the greatest financial interest in the action, CIG is presumed to be the plaintiff most capable of adequately representing the class.

### b) Typicality

Under Rule 23(a)(3), CIG's claims must be "typical" of the class's claims. *See* Fed. R. Civ. P. 23(a)(3). The prospective lead plaintiff's claims are considered typical of the class's claims "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (quoting *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010)). "In determining whether typicality is satisfied, a Court inquires 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Zhamukhanov*, 2015 U.S. Dist. LEXIS 22180, at *10-11 (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)) (finding in both cases, that Rule 23's "typicality" requirement was satisfied where the proposed lead plaintiffs allegedly purchased securities during the class periods, in reliance upon defendants' false or misleading financial statements, and the plaintiffs suffered damages as a result).

Here, CIG's claims are typical of the claims of the class at large. The claims for both CIG and the Class are based on the same statutes and legal theories, and they arise from the same set of facts, events, and course of conduct. *See* P & A, at 12:5-8. CIG, similar to the class at large, alleges that it purchased securities during the Class Period at artificially inflated prices, and suffered damages when Calavo Growers disclosed that its consolidated financial statements were materially misstated and should no longer be relied upon. *Id.* at 5:1-15, 12:1-5. Also, CIG and the class at large allege that Calavo Growers knew or should have known that its financial statements contained false or misleading information that amounted to material misstatements, and Calavo Growers failed to disclose materially adverse facts about the contingent consideration obligations. *E.g.,* El Dabe Compl. ¶ 7. As CIG and the putative class purport to have suffered the same injury resulting from the same facts, and because they would all be

---

alleges. 950 + 116 + 250 = 1,316, not the 1,516 shares alleged. *See* Certifications, Docket No. 20-2. The court would ask plaintiffs to explain the discrepancy at the hearing.

relying on the same legal theory, CIG's claims are typical of the class at large.

### c) Adequacy

Since CIG's claims are typical of the class's claims, the court must determine whether CIG "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). CIG's representation will be considered legally adequate so long as CIG's and its counsel's interests do not conflict with the interests of other class members, and CIG and its counsel will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, CIG has demonstrated that it has the ability and motivation to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). CIG has the greatest financial stake in this action, and its claims for relief are based on the same questions of law and fact as the class at large. *See* P & A, at 12:5-8. Also, CIG has chosen two experienced law firms to prosecute this action on the putative class's behalf. *Id.* at 13:9-12.

### d) Rebuttal

Under *Cavanaugh*, the court must provide other prospective lead plaintiffs with an "opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). Those plaintiffs not selected are allowed to present evidence that casts doubt on the presumptive lead plaintiff's ability to represent the class. *Id.* "In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery if they 'demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iv)). Here, CIG's appointment as lead plaintiff is unopposed, and therefore, the Court would select the CIG as lead plaintiff.

### C. Appointment of Lead Counsel

CIG has selected Pomerantz and Rosen to serve as co-lead counsel in this action. *See* P & A, at 14. The PSLRA mandates that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The district court is not free to appoint counsel of its own choosing, and "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen*, 586 F.3d at 710, 712. "[T]he district court's authority to disapprove lead

counsel should be exercised when necessary to protect the interests of the class." *Id.* at 712 (citing H.R. Conf. Rep. No. 104–369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734).

Here, there is no apparent dispute that the Pomerantz and Rosen law firms have substantial class action and securities litigation experience, having served as lead/co-lead counsel in several securities class actions. *See* Firm Resumes, Docket No. 20-4, 20-5, Ex. E, D. There is no indication in the record that these firms lack the ability or resources to protect the class's interests if litigation becomes complex or prolonged. *Id.* However, unless the litigation is shown to be (or will surely evolve into) a complex and/or prolonged lawsuit, the Court does not see the reason for the appointment of two law firms to represent the plaintiff class herein. The plaintiffs need to address this point at the hearing.

### III. Conclusion

In sum, the Court would consolidate both actions against Calavo Growers into a single case, grant CIG's Motion for Appointment of Lead Plaintiff, and hear further argument as to the Motion for Appointment of Lead Counsel.